NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARK BROWN, | : | Civil Action No. 19-13770 (SRC) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Mark Brown ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning February 13, 2013. A hearing was held before ALJ Lisa Hibner (the "ALJ") on November 28, 2017, and the ALJ issued an unfavorable decision on February 12, 2018. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of February 12, 2018, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain limitations. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of his past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on three grounds: 1) at step three, the ALJ failed to consider Listing 12.05B; 2) at step two, the ALJ erred in rejecting any psychotic symptoms; and 3) at step five, the hypothetical presented to the vocational expert did not include all of Plaintiff's limitations.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination." Id.  In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful.  At the first four steps, this requires that Plaintiff also show that, but for the error, he might have proven his disability.  In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

At step three, Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff met the requirements of Listing 12.05, Intellectual disorders.  In opposition, the Commissioner contends that this is harmless error at most.  Pursuant to Shinseki, the Commissioner is correct: as just discussed, Plaintiff has the burden of proving that he was harmed by the error, and he has not done so.  To do so, on this point, Plaintiff must show, at a minimum, that, but for the ALJ's failure to consider Listing 12.05, he could have met the requirements of Listing 12.05, which are as follows:

> 12.05   Intellectual disorder (see 12.00B4), satisfied by A or B:
>
> A. Satisfied by 1, 2, and 3 (see 12.00H):
>
>> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>>
>> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
>>
>> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

>    OR
>
>    B. Satisfied by 1, 2, and 3 (see 12.00H):
>
>    > 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>    >
>    > a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>    >
>    > b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>    >
>    > 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>    >
>    > a. Understand, remember, or apply information (see 12.00E1); or
>    >
>    > b. Interact with others (see 12.00E2); or
>    >
>    > c. Concentrate, persist, or maintain pace (see 12.00E3); or
>    >
>    > d. Adapt or manage oneself (see 12.00E4); and
>    >
>    > 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Plaintiff argues: "According to the medical evidence, Plaintiff may qualify under Section B of Listing 12.05." (Pl.'s Br. 20.) Thus, the Court considers the criteria stated in Listing 12.05B. Plaintiff points to his measured IQ score of 66, which could well satisfy the requirements stated in Listing 12.05B(1)(a), and support finding a marked limitation of element 12.05B(2)(a). Plaintiff does not muster the evidence, however, to show that, but for the ALJ's alleged error, Plaintiff could have satisfied all the other requirements of this Listing. Listing 12.05B(2) requires evidence of deficits in two areas of adaptive functioning at the marked level, or one area

4

at the extreme level.   Plaintiff's brief does not muster the evidence to show that it demonstrates that he has adaptive deficits meeting the severity requirements.   Plaintiff argues, instead, only that various pieces of cited evidence show some unspecified level of difficulty with element 12.05B(2)(c), which states, "Concentrate, persist, or maintain pace (see 12.00E3)."   This Listing specifies that Listing 12.00E3 provides further guidance, but Plaintiff does not refer to it. Furthermore, Listing 12.00F2 defines the five-point scale used in Listing 12.05B(2) and states, in relevant part:

> c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

Plaintiff's brief simply does not engage with the scheme for assessing severity of limitations stated in the Listing 12.00F2.   Plaintiff does not even assert that the evidence shows that his ability to concentrate, persist, or maintain pace is seriously limited.

Furthermore, and more fatally for Plaintiff's argument on this point, Plaintiff overlooks the fact that the ALJ did in fact analyze the areas of adaptive functioning required by Listing 12.05B(2).   The ALJ assessed the paragraph B criteria in regard to Listings 12.02, 12.04, and 12.06.   (Tr. 40.)   The paragraph B criteria for these Listings are identical to the criteria for Listing 12.05B(2).   Plaintiff has failed to challenge the assessment of adaptive functioning that the ALJ performed, and thus has failed to show that it is not supported by substantial evidence.

Thus, while Plaintiff argues that the evidence shows difficulties with concentration, Plaintiff does not address the ALJ's assessment of this area of adaptive functioning, reported in the ALJ's discussion of the paragraph B criteria.   The ALJ noted that Plaintiff had driven

himself to the hearing, and that this evidence supported no more than a moderate limitation in the area of concentration.  Plaintiff neither addresses nor challenges this specific determination, and this Court finds no basis to conclude that it is not supported by substantial evidence.

Nor does Plaintiff's brief address the last requirement, Listing 12.05B(3).  Plaintiff has not cited evidence of record that would support a conclusion that he meets the requirements of Listing 12.05B.  Therefore, this Court agrees with the Commissioner that, pursuant to Shinseki, Plaintiff has not met his burden of demonstrating to this Court that any error was harmful. While the ALJ may not have written specifically that she considered Listing 12.05B, she did evaluate the areas of adaptive functioning that are identical to the requirements of Listing 12.05B(2).  The ALJ found that the evidence did not support the conclusion that Plaintiff has marked limitations in two areas or an extreme limitation in one area.  Plaintiff failed to challenge this analysis.  The bottom line is that Plaintiff argued that the ALJ erred by failing to consider Listing 12.05B, but Plaintiff overlooked the fact that the ALJ made unchallenged determinations that preclude finding that Listing 12.05B was satisfied.

Plaintiff next argues that the "ALJ erred in rejecting any psychotic symptoms."  (Pl.'s Br. 18.)  Plaintiff then challenges this statement from the ALJ: "schizophrenia was never diagnosed by a medically acceptable source with proper clinical correlation. (AR 38)."  This statement appears in the ALJ's decision in a paragraph at step two in which the ALJ discussed the evidence relevant to determining that schizophrenia was not a severe impairment.  Plaintiff argues that the ALJ overlooked the fact that consultative examiner Dr. Brown diagnosed Plaintiff with schizophrenia.  Dr. Brown's report, dated April 22, 2015, does give Plaintiff a diagnosis of schizophrenia, paranoid type.  (Tr. 442.)  Plaintiff argues that the ALJ's failure to include Dr.

6

Brown's diagnosis violates Third Circuit law: "The ALJ may choose which evidence to credit, but must consider all of the evidence and give reason for rejecting or discrediting competent evidence."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

The Commissioner, in opposition, points out that the ALJ did not simply ignore Dr. Brown's evaluation, but cited it, which Plaintiff's brief acknowledges.  Furthermore, the ALJ addressed the issue of whether the evidence supported finding schizophrenia to be a severe impairment.  What follows is the ALJ's discussion of this issue in its entirety:

> The undersigned finds schizophrenia is not a medically determinable impairment due to a lack of objective evidence. A medically determinable impairment may not be established solely on the basis of symptoms alone, or on the claimant's allegations regarding symptomatology (20 CFR 404.1508, 416.908, and SSR 96-4p ). There must be evidence from an acceptable medical source in order to establish the existence of a medically determinable impairment (20 CFR 404.1527(f) and 916.927(f)). The evidence demonstrates that schizophrenia was never diagnosed by a medically acceptable source with proper clinical correlation. Rather, schizophrenia was articulated as a possible differential diagnosis to be ruled out. In fact, mental status examination shows that the claimant only made vague reference to auditory hallucinations and paranoia (see, 4F). There is no evidence the claimant was ever formally diagnosed with schizophrenia or treated for symptoms of psychosis.

(Tr. 38-39.)  Plaintiff is correct that the ALJ's statement that Plaintiff had never been formally diagnosed with schizophrenia is wrong.

Under Third Circuit law, the ALJ's step two determination is in error.  The Third Circuit has interpreted the relevant Rulings and Regulations to hold that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  The Newell Court further emphasized:

> An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work."  SSR 85-28, 1985 SSR LEXIS 19 at *6-8.  Only those

7

> claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. *See Bowen*, 482 U.S. at 158 (O'Connor, J., concurring). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater*, 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Newell, 347 F.3d at 546; accord McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.")  In McCrea, the Third Circuit reaffirmed the severity standard announced in Newell and added that, in light of the low threshold for severity, findings that an impairment is not severe "should be reviewed with close scrutiny" and are "certain to raise a judicial eyebrow."  McCrea, 370 F.3d at 357.

This Court agrees with Plaintiff that, under the *de minimis* standard set forth in Third Circuit law, the ALJ erred in determining that schizophrenia was not a severe impairment at step two.  The key question is, however, whether, pursuant to Shinseki, Plaintiff has demonstrated that he was harmed by this error, and this Court finds that he has not done so.  At step two, the ALJ found ten other severe impairments.  Had the total count been eleven, instead of ten, it would not have made any difference to the outcome.  Crucially, Plaintiff has not argued that he meets the requirements of Listing 12.03 for schizophrenia and other psychotic disorders.  Nor did Plaintiff argue that including Dr. Brown's diagnosis of schizophrenia would have impacted the outcome of the residual functional capacity determination, at step four.  This Court finds no prejudice to Plaintiff in any error at step two, and Plaintiff has not argued that this error would have impacted the determinations at steps three and four.  Plaintiff has failed to persuade this Court that the ALJ's error at step two harmed him.

8

Furthermore, while this Court agrees that the ALJ did not follow the *de minimis* standard, the Court finds this to be a harmless error.   Having reviewed the evidence of record, the ALJ's implicit discounting of Dr. Brown's diagnosis of schizophrenia is supported by substantial evidence.   Plaintiff does not point to any evidence of record that he ever received any medication or other treatment for schizophrenia.   The ALJ thus had solid support for his determination that the "evidence demonstrates that schizophrenia was never diagnosed by a medically acceptable source with proper clinical correlation."[1]   (Tr. 38.)   The lack of evidence of any treatment for schizophrenia, ever, in Plaintiff's 44 years of life constitutes substantial evidence that schizophrenia has not had any impact on Plaintiff's ability to work.   Federal Rule of Civil Procedure 61 states: "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."   This Court finds that the ALJ's error at step two did not affect Plaintiff's substantial rights under the Social Security Act. It is harmless error.

Last, Plaintiff argues that, at step five, the ALJ erred by presenting to the vocational expert a hypothetical that did not include all of Plaintiff's severe and non-severe limitations. Plaintiff cites no law relevant to step five.   Instead, Plaintiff cites law relevant to the residual functional capacity determination at step four.   Plaintiff has shown no legal authority for the proposition that the ALJ must include all severe and non-severe impairments found at step two in the hypothetical at step five.   Plaintiff does not contend that the hypothetical was inconsistent with the step four residual functional capacity determination.   The use of a hypothetical at step five that is consistent with the residual functional capacity determination at step four is not error.

---

[1] Plaintiff has not argued that this statement is false or unsupported by substantial evidence.

Third Circuit law on this point is clear:

> We do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant. Instead the directive in *Podedworny* is that the hypotheticals posed must "accurately portray" the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record." . . . Fairly understood, such references to all impairments encompass only those that are medically established. . . And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). "Credibly established limitations" refers to limitations established in the step four residual functional capacity determination. Plaintiff has not demonstrated that the hypothetical used at step five failed to accurately convey all of Plaintiff's credibly established limitations, as contained in the residual functional capacity determination at step four.

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that he was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

           s/ Stanley R. Chesler  
           STANLEY R. CHESLER, U.S.D.J.

Dated: June 2, 2020